WEAVER, Appellee,

v.

**COLWELL FINANCIAL CORPORATION et al.; Pittock, Appellant.**

[Cite as *Weaver v. Colwell Financial Corp.* (1992), 73 Ohio App.3d 139.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61885.

Decided March 16, 1992.

140

*Phillip A. Lawrence & Assoc.* and *James C. Wrentmore,* for appellee.
*Thomas G. Kelley,* for appellant.

KRUPANSKY, Judge.

Defendant appeals from the trial court's order denying his Civ.R. 60(B) motion for relief from judgment. The relevant facts follow.

In August 1989, plaintiff filed a complaint in the Cuyahoga County Court of Common Pleas against defendants Colwell Financial Corporation ("Colwell"); John Fulton, Vice President of the corporation; and Raymond Pittock, appellant herein. In his complaint plaintiff alleged he was advised by defendant Colwell that plaintiff had signed a mortgage note and mortgage deed on certain real property and that defendant would seek foreclosure due to nonpayment on the mortgage. Plaintiff alleged he thereupon informed defendants that he had never signed the note and deed and the signature notarized by defendant Pittock was a forgery. Plaintiff further alleged defendant Colwell nevertheless foreclosed on the property thereby damaging plaintiff's credit reputation. For his second cause of action plaintiff alleged defendant Fulton participated in a fraud and defendant Pittock knowingly notarized a forged signature. In his third cause of action plaintiff alleged defendant Pittock notarized the signature without ascertaining that the signature was genuine. Plaintiff demanded judgment against the defendants in the amount of $106,289 compensatory and $200,000 punitive damages, and also demanded a removal of the foreclosure from his credit files.

All the defendants filed answers in the case. Defendant Pittock also filed an amended answer. The parties pursued discovery. On January 31, 1990, plaintiff dismissed *without* prejudice his claims against John Fulton. The journal entry and trial court docket reflects a further pretrial conference was scheduled for April 4, 1990. The next journal entry in the case, dated September 5, 1990, was the following:

"Per Local Rule 21H(2),[1] Judgment for pltf's. against Deft. Raymond Pittock in the amount of $200,000.00."

Thereafter, on September 6, 1990, a stipulation for dismissal and judgment entry was filed. This entry dismissed plaintiff's claims against defendants Colwell Financial Corporation and John Fulton *with* prejudice.

On October 9, 1990, defendant Pittock filed a notice of appeal of the judgment against him to this court; that appeal was subsequently dismissed November 26, 1990 pursuant to App.R. 4(A). During the pendency of that appeal, on October 23, 1990, defendant also filed in the trial court a Civ.R. 60(B) motion for relief from judgment. Attached thereto was an affidavit of defendant's attorney wherein he stated he never received notice of a trial date. On March 22, 1991, defendant also filed in the trial court a "Motion to Reduce Judgment."

Thereafter, the trial court on May 10, 1991 issued an order overruling defendant's motions to reduce judgment and for relief from judgment. Defendant filed a timely appeal citing two assignments of error for review.

■ Defendant's first assignment of error follows:

"The trial court erred in denying defendant Raymond C. Pittock's motion for relief of judgment [*sic*]."

This assignment of error lacks merit.

Defendant argues the trial court abused its discretion by denying his Civ.R. 60(B) motion for relief from judgment for the following reasons, *viz.*, (1) the affidavit of defendant's attorney demonstrated excusable neglect; (2) no hearing was held on the motion for relief from judgment; and (3) defendant received no notice that judgment in the case would be rendered against him pursuant to Loc.R. 21(III)(H). Defendant's arguments are all unpersuasive.

Civ.R. 60(B) states the following:

"Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have

---

**1.** Loc.R. 21(III)(H)(2) provides in pertinent part as follows:

"(H) Any judge presiding at a pretrial conference or trial shall have authority:

" * * * *

"(2) *After notice,* [to] order the plaintiff to proceed with the case and decide and determine all matters ex parte upon failure of the defendant to appear in person or by counsel at any pretrial conference or trial, as required by Part III(B) of this Rule." (Emphasis added.)

been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

"The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules."

■ A successful Civ.R. 60(B) motion has three components, *i.e.*, (1) timeliness, (2) grounds under Civ.R. 60(B), and (3) a meritorious defense or claim. *GTE Automatic Electric, Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113.

■ Defendant was therefore required to allege operative facts relating to these three requirements. If any one of these three requirements is not met, the motion should be overruled. *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 6 OBR 403, 453 N.E.2d 648. Moreover, the question of whether relief should be granted is left to the sound discretion of the trial court. *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 514 N.E.2d 1122; *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 68 O.O.2d 251, 316 N.E.2d 469.

■ In the case *sub judice*, defendant met the first two requirements, *viz.*, that of timeliness and grounds under Civ.R. 60(B)(1). As to the first component, timeliness of the motion, it has been held that "a motion may be filed within one year under Civ.R. 60(B) but still may not be considered within a 'reasonable time.' " *Adomeit v. Baltimore, supra*, at 106, 68 O.O.2d at 256, 316 N.E.2d at 476. In the case *sub judice*, defendant filed his motion on October 23, 1990. Defendant met the timeliness requirement by filing his Civ.R. 60(B) motion within forty-seven days after judgment.

■ The second requirement is the motion present operative facts to demonstrate that the movant is entitled to relief on the ground stated. In the case *sub judice*, defendant alleged that he was entitled to relief under Civ.R. 60(B)(1), "mistake, inadvertence, surprise, excusable neglect." In his affidavit attached to the brief in support of the motion, defendant's counsel states the following:

"[A]t no time was he advised that this matter was set for trial, and the first time he got notice of a trial in this matter, he [*sic*] when he received a

postcard from the Clerk of Courts, for Cuyahoga County, Ohio, stating that a judgment had been entered against his client in the amount of Two Hundred Thousand Dollars ($200,000.00), on September 6, 1990."

In his brief to this court, defendant states the following:

"Through a mix-up in Mr. Pittock's lawyer's office, Mr. Pittock nor his counsel attended the first scheduled pre-trial in this matter. Subsequent to this, Mr. Pittock and his counsel never received any further notices of any other court proceedings concerning this matter."

A review of the record in the case *sub judice* supports defendant's foregoing statements. The record reveals the following entry was journalized on January 31, 1990:

"Deft. Fulton is dismissed without prejudice. Deft. Fulton's counterclaim is dismissed without prejudice. By pre-trial on 4/24/90 at 9:00 parties to be deposed. Vol. 1225 Pg. 625 NOTICE ISSUED. CASE SET FOR PRE-TRIAL."

It is clear from the record in the case *sub judice* defendant did not receive notice from the trial court of the scheduling of the trial. The journal entry of January 31, 1990 states the case was set for pretrial on April 24, 1990. Defendant does not deny he received notice of this pretrial. He states he failed to attend due to a mistake in his office procedure. The docket in the case reflects no further entries were made by the trial court until the judgment was entered September 5, 1990. While it has generally been held that parties are expected to keep themselves informed of the progress of their case, see, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. Peller* (1989), 63 Ohio App.3d 357, 578 N.E.2d 874, defendant could not be expected to be informed of a trial date when the trial court neither made a journal entry concerning the trial date nor sent out a postcard notice of the trial date. Thus, there was nothing which could be said to give the defendant "constructive notice" of the fact the case had been set for trial. Generally, parties are "entitled to notice of a hearing [by] the setting of the case on the docket." *Ries Flooring Co. v. Dileno Constr. Co.* (1977), 53 Ohio App.2d 255, 259, 7 O.O.3d 320, 322, 373 N.E.2d 1266, 1269.

In *Ohio Valley Radiology Assoc., Inc. v. Valley Hosp. Assn.* (1986), 28 Ohio St.3d 118, 124, 28 OBR 216, 221–222, 502 N.E.2d 599, 604, the Supreme Court stated the following:

" * * * Ohio courts have traditionally held that while some form of notice of a trial date is required to satisfy due process, an entry of the date of trial on the court's docket constitutes reasonable, constructive notice of that fact. * * *

" * * * [I]n a case such as this in which the plaintiffs-appellees received no other type of notice, they were at least entitled to the constructive notice that comes from the court's setting down the trial date upon its docket. We find nothing in the record to indicate that the plaintiffs-appellees had reasonable notice, constructive or otherwise, of the trial date."

It is axiomatic that "[a] court of record speaks only through its journal and not by oral pronouncement * * * ." *Schenley v. Kauth* (1953), 160 Ohio St. 109, 51 O.O. 30, 113 N.E.2d 625, paragraph one of the syllabus.

Not only was the date of the trial not recorded on the docket, there is no reliable evidence submitted in the case *sub judice* to indicate *any* notice by the court of the trial date was sent to the parties. Cf. *State Farm Mut. Auto. Ins. Co. v. Peller* (1989), 63 Ohio App.3d 357, 578 N.E.2d 874.

The only information concerning notice given to defendant about a trial date is an unverified "telephone message" attached to plaintiff's brief to this court purporting to be a call from the trial court to plaintiff's counsel advising him of a trial date in the case. This, however, is not evidence. This court cannot infer defendant's counsel received such notice. Defendant's counsel denies receiving such notice. Under the circumstances of the case *sub judice*, therefore, the procedure of telephoning the attorneys to "remind" them of a trial date which was never entered on the court's docket fails to comply with the "reasonable, constructive notice" requirement necessary to satisfy due process.

" * * * [T]here are no cases which have come to this court's attention * * * which contravene the age old rule a court can only speak through its journal and the long-standing practice of this court of appeals to refuse to allow a trial court to sanction a party for failure to obey a court order which has not been journalized. * * * " *State Farm Mut. Auto. Ins. Co. v. Peller, supra,* at 363, 578 N.E.2d at 878 (dissenting opinion). Moreover, in *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 249, 18 O.O.3d 442, 445, 416 N.E.2d 605, 609, the Ohio Supreme Court stated that in ruling on a Civ.R. 60(B) motion, the determination of whether excusable neglect occurred " * * * must of necessity take into consideration all the surrounding facts and circumstances." Therefore, regarding the second requirement of a successful Civ.R. 60(B) motion, defendant has met the requirement by stating in his motion a justifiable reason sufficient to entitle him to relief from judgment.

However, in the case *sub judice*, it is apparent defendant failed to sustain his burden with respect to the third requirement for a successful motion for relief from judgment, *viz.*, a meritorious defense. *Nowhere* in his motion did defendant state he had a meritorious defense to plaintiff's claim against him.

Instead, counsel's affidavit attached to the brief in support of the motion merely states the following:

"Affiant further says, that in the Complaint, the only allegation against defendant Pittock, is that he notarized a signature that allegedly was not the signature of the plaintiff, yet Two Hundred Thousand Dollars ($200,000.00) was awarded against this defendant."

This is patently insufficient for the purposes of meeting the third requirement of a Civ.R. 60(B) motion. Cf. *Rose Chevrolet v. Adams* (1988), 36 Ohio St.3d 17, 520 N.E.2d 564.

Defendant makes the further argument the trial court abused its discretion by issuing a ruling on his motion for relief from judgment without a hearing. However, it has been held that "if the material submitted by the movant in support of its motion contains no operative facts or meager and limited facts and conclusions of law, it will not be an abuse of discretion for the trial court to refuse to grant a hearing * * *." *Adomeit v. Baltimore, supra,* 39 Ohio App.2d at 105, 68 O.O.2d at 255, 316 N.E.2d at 476.[2]

Therefore, since defendant failed to meet all requirements of a successful Civ.R. 60(B) motion, the trial court did not abuse its discretion in denying defendant's motion for relief from judgment. *Svoboda v. Brunswick, supra; GTE Automatic Electric, Inc. v. ARC Industries, Inc., supra.*

Accordingly, defendant's first assignment of error is overruled.

■ Defendant's second assignment of error follows:

"The trial court erred in denying defendant Raymond C. Pittock's motion to reduce judgement [*sic*]."

This assignment of error also lacks merit.

Defendant argues the trial court abused its discretion in denying his "motion to reduce judgment" without a hearing[3] to determine whether the damages awarded to plaintiff were excessive. His argument is unpersuasive.

---

**2.** Moreover, included in the record on appeal is a letter from the Cuyahoga County Court of Common Pleas Central Scheduling Office advising defendant's attorney that a hearing on his motion to reduce judgment was set for April 29, 1991. Thereafter, the following journal entry appeared under date of May 10, 1991:

"Motion of Deft. Raymond Pittock to reduce judgment and/or relief from judgment is overruled."

Thus, indications in the record are that defendant was at least afforded the opportunity to present his arguments relative to his Civ.R. 60(B) motion.

**3.** See fn. 2.

Defendant filed his "motion to reduce judgment" on March 22, 1991, nearly seven months after the judgment for plaintiff was rendered.[4]

Defendant challenged the validity of the trial court's judgment by filing a Civ.R. 60(B) motion on October 23, 1990. Therefore, Civ.R. 60(B) provided "the exclusive grounds which must be present and the procedure which must be followed in order for a court to vacate its own judgment." *McCue v. Buckeye Union Ins. Co.* (1979), 61 Ohio App.2d 101, 15 O.O.3d 103, 399 N.E.2d 127. The trial court did not rule on defendant's Civ.R. 60(B) motion until May 1991. However, the trial court lacked jurisdiction to simply *modify* or reduce the September 5, 1990 judgment in March 1991, seven months after final judgment had been rendered. *Cale Products, Inc. v. Orrville Bronze & Alum. Co.* (1982), 8 Ohio App.3d 375, 8 OBR 489, 457 N.E.2d 854; *GTE Automatic Electric, Inc. v. ARC Industries, Inc., supra.*

Therefore, since the trial court did not have jurisdiction to grant such motion to simply modify or reduce judgment without first vacating the judgment, the trial court did not err in denying defendant's "motion to reduce judgment."

Accordingly, defendant's second assignment of error is also overruled.

■ However, this does not dispose of the case *sub judice*. The court *sua sponte* is compelled to invoke the doctrine of "plain error" to address the amount and the lack of specificity of the trial court regarding damages awarded to plaintiff.

The court is mindful of the following admonition:

"Implementation of the plain error doctrine is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. [citation.] The plain-error doctrine permits correction of judicial proceedings when error is clearly apparent on the face of the record and is prejudicial to the appellant. [citation.] Although the plain-error doctrine is a principle applied almost exclusively in criminal cases, * * * the doctrine may also be applied in civil causes * * *, if the error complained of "would have a material adverse affect [*sic*] on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 209 [24 O.O.3d 316, 317, 436 N.E.2d 1001–1003]."

*Reichert v. Ingersoll* (1985), 18 Ohio St.3d 220, at 223, 18 OBR 281, at 283–284, 480 N.E.2d 802, at 805.

---

**4.** The record in the case *sub judice* reveals the following journal entry: "Case disposed *by court trial* on 9/05/90." (Emphasis added.) However, no transcript appears in the record. This would appear to indicate a hearing was held on the issues involved in the case, including the issue of damages.

In the case *sub judice, the complaint states* a cause of action in fraud and states the following with regard to plaintiff's damages:

"7. * * * [Plaintiff] applied for a large purchase credit and was turned down by two banks * * *. Plaintiff finally obtained a loan at an increased cost of $6,289.00.

"8. Plaintiff has incurred permanent damage of his credit reputation and has been damage[d] in the sum of $106,289.00.

" * * *

"13. That Defendant, Raymond C. Pittock, notarized the purported signature of the Plaintiff, David A. Weaver, without ascertaining that said signature was genuine, to the plaintiff's damage.

"WHEREFORE, Plaintiff demands judgment against the defendants severally and jointly for $106,289.00 as compensatory damages and $200,000.00 for punitive damages, for a total of $306,289.00, plus interest and costs and attorney's fees and the satisfaction and/or removal of the foreclosure from the credit files."

The judgment of the trial court merely states the following:

" * * * [J]udgment for pltfs. [*sic*] against Deft. Raymond Pittock in the amount of $200,000.00."

 It must be noted that punitive damages may not be awarded in the absence of proof of actual or compensatory damages. *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 20 OBR 213, 485 N.E.2d 704; R.C. 2315.21. In *Bishop*, the court further stated as follows:

" * * * Punitive damages are awarded as punishment for causing compensable harm and as a deterrent against similar action in the future. No civil cause of action in this state may be maintained simply for punitive damages. * * * " (Citations omitted.)

 Thus, it has long been the practice and requirement for the trier of fact to state compensatory damages separately from punitive damages. See, *e.g.*, 1 Ohio Jury Instructions, Damages, Sections 23.70 and 23.71. Without such designation, damages are generally considered to be compensatory. However, Civ.R. 54(C) reads in pertinent part as follows:

" * * * [A] demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand unless he amends his demand not later than seven days before the commencement of the trial."

In the case *sub judice*, plaintiff states actual damages in the amount of $6,289; further, he prayed for $106,289 in compensatory damages. However, the trial court's judgment was in the amount of $200,000 the amount prayed

for as punitive damages. Since punitive damages cannot be awarded without first awarding compensatory damages, it would be logical to assume the $200,000 was awarded as compensatory damages; however, this amount exceeds the amount prayed for as compensatory damages. It, therefore, remains unclear what the trial court was actually awarding to plaintiff. Without a transcript of a hearing on plaintiff's claim or any evidence upon which to support this large judgment, the court thus finds it proper to paraphrase the following statement from *Shimola v. Nationwide Ins. Co.* (1986), 25 Ohio St.3d 84, 25 OBR 136, 495 N.E.2d 391: To hold that the trier of fact intended to include an award of actual damages in the punitive damages amount would be pure speculation and this court will not be put in such position. The corollary of this statement would also hold true.

" 'Inasmuch as the judgment and its enforcement is the end and aim of the whole litigation, to satisfy this purpose it must so dispose of the matters at issue between the parties that they and such other persons as may be affected, will be able to determine with reasonable certainty the extent to which their rights and obligations have been determined.' " *Licht v. Woertz* (1929), 32 Ohio App. 111 at 115, 167 N.E. 614 at 616.

However,

" ' * * * A judgment not in accordance with the allegations of the pleadings, the issues therein raised, or the prayers therein contained, will be reversed and the cause remanded for a new trial.' " *Id.*

This court thus finds plain error in the trial court's failure to award damages in compliance with the prayer and to separately designate the amounts, if any, awarded for compensatory and punitive damages.

The court finds precedent in the decision to remand this case on the issue of damages in *Carr v. Charter Natl. Life Ins. Co.* (1986), 22 Ohio St.3d 11, 22 OBR 9, 488 N.E.2d 199.

In *Carr,* the trial court awarded a default judgment against appellant company in favor of plaintiffs-appellees. A hearing was held on the issue of damages at which plaintiff Carr testified; however, no documentation of damages was offered at the hearing. Thereafter, the trial court awarded plaintiffs $200,000 plus attorney fees. Appellant company filed a Civ.R. 60(B) motion for relief from judgment. The motion was denied by the trial court; on appeal, the denial of the motion was affirmed. Reviewing the case pursuant to the allowance of a motion to certify the record, the Supreme Court stated it did not find adequate evidence in the record to grant appellant's Civ.R. 60(B) motion on the grounds of "excusable neglect"; however, the court also did not find adequate evidence in the transcript of proceedings to support the trial court's award of damages and attorney fees. Therefore,

the Supreme Court remanded the case for a hearing on the issue of damages. Thus, in order to achieve justice the Supreme Court bypassed the requirements of a Civ.R. 60(B) motion and went straight to the heart of the injustice of the damages. However, in *Carr* the Supreme Court had *a transcript to exemplify the trial court's error.* In the case *sub judice,* this court lacks such evidence to exemplify error, if any. Without a transcript of the evidence, this court has nothing to review and must presume regularity of the trial court's proceedings and affirm its judgment; however, in the case *sub judice* plain error exists on the face of the record between the trial court's journal entry awarding damages and the amount of damages as stated in the prayer of plaintiff's complaint.

Therefore, the case is remanded to the trial court with instructions to give all parties reasonable notice of an oral hearing on the issue of damages and to award damages, if any, based upon plaintiff's proof of damages and in an amount fair and reasonable under all the facts and circumstances.

The judgment of the trial court regarding damages is reversed and the cause is remanded for a new trial on the issue of damages.

*Judgment reversed in part*
*and cause remanded.*

DYKE, P.J., and FRANCIS E. SWEENEY, J., concur.